RECORD NO. 14-274

# In The
# United States Court Of Appeals
# For The Fourth Circuit

## MONTGOMERY PARK, LLC,

*Petitioner,*

v.

## NCO FINANCIAL SYSTEMS, INC.,

*Respondent.*

Appeal from the United States District Court for the
District of Maryland at Baltimore in Case No. 11-cv-01020

---

## PETITION FOR PERMISSION TO APPEAL
## INTERLOCUTORY ORDER

---

*RECEIVED 2014 JUN -6 PM 1: 00 U.S. COURT OF APPEALS FOURTH CIRCUIT*

John E. McCann, Jr.
John R. Fischel
Ranak K. Jasani
MILES & STOCKBRIDGE P.C.
100 Light Street
Baltimore, Maryland 21202
(410) 727-6464
jmccann@milesstockbridge.com
jfischel@milesstockbridge.com
rjasani@milesstockbridge.com

*Counsel for Petitioner*

Howard G. Goldberg
GOLDBERG & BANKS, P.C.
1829 Reisterstown Rd.
Baltimore, Maryland 21208
(443) 940-1340
hgoldberg@gbpclawfirm.com

*Counsel for Petitioner*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. 1:11-cv-01020    Caption: NCO Financial Systems, Inc. v. Montgomery Park, LLC

Pursuant to FRAP 26.1 and Local Rule 26.1,

Montgomery Park, LLC
(name of party/amicus)

who is _____Petitioner_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO

2.    Does party/amicus have any parent corporations?  ☑YES ☐NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:
      The sole member of Petitioner is Transhed LLC, which in turn, has multiple members but no single corporate parent.

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☐YES ☑NO
      If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐ YES ☑ NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐ YES ☑ NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐ YES ☑ NO
    If yes, identify any trustee and the members of any creditors' committee:

Signature: _____        Date: _____ June 6, 2014 _____
             John E. McCann, Jr.
Counsel for: Petitioner, Montgomery Park, LLC

## CERTIFICATE OF SERVICE
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

I certify that on _____ June 6, 2014 _____ the foregoing document was served on all parties or their counsel of record ▮▮▮▮ ▮▮▮▮ ▮▮▮▮ ▮▮▮▮ ▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮ , by serving a true and correct copy at the addresses listed below:

Norman E. Greenspan, Esquire
Starfield & Smith, P.C.
1300 Virginia Drive, Suite 325
Fort Washington, PA 19034

Joshua R. Treem, Esquire
Brown, Goldstein & Levy
Suite 1700
Baltimore, MD 21202

_____        June 6, 2014
        (Signature)                  (date)

- 2 -

# TABLE OF CONTENTS

<u>Page</u>

TABLE OF AUTHORITIES ............................................................... ii

PROCEDURAL BACKGROUND.....................................................1

STATEMENT OF FACTS ............................................................... 2

    A.    The Early Termination Provision of the Lease .....................................3

    B.    NCO's Failure to Exercise Its Limited Right of Early Termination ...................................................................................4

    C.    The District Court's Ruling...............................................................6

QUESTIONS PRESENTED.............................................................9

ARGUMENT .................................................................................9

    A.    The District Court's Ruling Presents Narrow Questions of Law As To Which There are Substantial Grounds for Difference of Opinion ....................................................................................10

    B.    The Issue of Early Termination Presents "Controlling Questions of Law" Well-Suited to an Interlocutory Appeal................................16

    C.    Immediate Appeal "May Materially Advance the Ultimate Termination of the Litigation" ...........................................................19

CONCLUSION ...........................................................................20

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Beckenheimer's Inc. v. Alameda Associates,*
  327 Md. 536, 611 A.2d 105 (1992) ..............................................*passim*

*Builder's Mutual Ins. Co. v. Parallel Design & Dev. LLC,*
  785 F. Supp. 2d 535 (E.D. Va. 2011) ........................................12

*In re Cement Antitrust Litig.,*
  673 F.2d 1020 (9th Cir.1982) ...................................................9

*Chesapeake Bank of Maryland v. Monroe Muffler/Brake, Inc.,*
  166 Md. App. 695, A.2d 384 (2006) ...........................10, 11, 14, 16

*Elderkin v. Carroll,*
  403 Md. 343, 941 A.2d 1127 (2008) .........................10, 14, 16

*Equal Employment Opportunity Commission v. Baltimore County,*
  747 F.3d 267 (4th Cir. 2014)................................................10, 18

*Fannin v. CSX Transport., Inc.,*
  873 F.2d 1438, 1989 W.L. 42583 (4th Cir. 1989)...........................18

*Freed v. Worcester County Dep't. of Soc. Servs.,*
  69 Md. App. 447, 518 A.2d 159 (1986) .......................................15

*Holzman v. Fiola Blum, Inc.,*
  125 Md. App. 602, A.2d 818 (1999) ............................................17

*Katz v. Carte Blanche Corp.,*
  496 F.2d 747 (3d Cir.1974) ......................................................18

*Laws v. Thompson,*
  78 Md. App. 665, 554 A.2d 1264 (1989) ....................................15

*Myles v. Laffitte,*
  881 F.2d 125 (4th Cir.1989) ....................................................10

*North Carolina ex rel. Howes v. W.R. Peele, Sr. Trust,*
   889 F. Supp. 849 (E.D.N.C. 1995) ..................................................18

*Ocean Petroleum, Co., Inc. v. Yanek,*
   416 Md. 74, 5 A.3d 683 (2010) ......................................................12

*President and Directors of Georgetown v. Madden,*
   660 F.2d 91 (4th Cir. 1981) .........................................................9, 10

*Robertson v. Sea Pines Real Estate Co., Inc.,*
   679 F.3d 278 (2012)...................................................................10, 18

*In re Travelstead,*
   250 B.R. 862 (D. Md. 2000) ...........................................................18

*Weaver v. Zenimax,*
   175 Md. App. 16, 923 A.2d 1032 (2007) .......................................15

*Weichart v. Faust,*
   419 Md. 306, 19 A.3d 393 (2011) ..................................................15

**Statute**

28 U.S.C. § 1292(b) .........................................................1, 9, 10, 18

**Rule**

Fed. R. App. P. 5 ..................................................................................1

## PETITION FOR PERMISSION TO APPEAL
## INTERLOCUTORY ORDER

Petitioner Montgomery Park, LLC ("Montgomery Park"), pursuant to 28 U.S.C. § 1292(b) and Rule 5 of the Federal Rules of Appellate Procedure ("FRAP"), hereby petitions this Court for permission to appeal from an interlocutory order of the United States District Court for the District of Maryland (the "District Court") in Civil Action No. 1:11-cv-01020-GLR.

## PROCEDURAL BACKGROUND

The instant case involves a commercial lease dispute between Montgomery Park and its tenant, Respondent NCO Financial Systems, Inc. ("NCO"). By Memorandum Opinion and Order dated December 20, 2013,[1] the District Court granted partial summary judgment in favor of NCO by declaring as a matter of law that NCO properly exercised an early termination option in its lease. The District Court's ruling raises controlling issues of governing Maryland law regarding "strict compliance" with conditions precedent to the exercise of contractual options. By subsequent Order dated May 27, 2014,[2] and based on a detailed explanation of the applicable standard under § 1292(b), the District Court granted Montgomery Park leave to file this Petition stating, in part:

---

[1] Certified copies of the Memorandum Opinion and Order dated December 20, 2013 (together the "MSJ Order") are collectively attached as **Exhibit 1.**

[2] A certified copy of the Order dated May 27, 2014 (the "Leave Order") is attached as **Exhibit 2.**

1

> Montgomery Park's disagreement with the Court's interpretation of
> the Lease's Early Termination Provision demonstrates a difference of
> opinion so as to necessitate the unusual step of granting an immediate
> interlocutory appeal, especially where resolution in Montgomery
> Park's favor on appeal may prevent the necessity of a second trial on
> Montgomery Park's counterclaims.

(Exh. 2, Leave Order at 4).

With leave of the District Court, Montgomery Park now petitions this Court for

permission to pursue an interlocutory appeal of controlling questions of Maryland

law, about which there are substantial grounds for difference of opinion. By ensuring

that all triable claims will be presented in one unified trial, the requested interlocutory

appeal will potentially obviate the need for a time-consuming and expensive second

trial on the issue of early termination, thereby materially advancing the ultimate

resolution of the case. Moreover, interlocutory review by this Court will provide

guidance to drafters of leases and other contracts in Maryland who justifiably rely on

the phrase "strict compliance" to require exact performance with express conditions of

contractual options. By misapplying controlling decisions of Maryland's appellate

courts, the District Court's ruling creates uncertainty in the law by undermining the

enforceability of clear contractual language.

## STATEMENT OF FACTS

Effective March 15, 2003, the parties entered into an Office Lease

Agreement (the "Lease"), pursuant to which Montgomery Park (as "Landlord")

leased office space to NCO (as "Tenant") in the Montgomery Park Business Center

2

located in Baltimore City, Maryland.[3]  The Lease is for a term of twelve years, expiring in March of 2015.[4]  During the term of the Lease, NCO is required "to pay rent to Montgomery Park in two components, 'Base Rent' plus 'Additional Rent,' which includes 'Real Estate Taxes' and 'Operating Expenses.'"[5]  Under the Lease, all "Base Rent" and "Additional Rent" are together referred to as "Rent."[6]

## A.    The Early Termination Provision of the Lease

Although the Term of the Lease is twelve years, the Lease affords NCO a limited, "one-time conditional right" to terminate the Lease after eight years, provided that NCO strictly comply with certain conditions.[7]  Among those conditions is the timely payment of a Termination Fee in the amount of ten months' Rent paid in two equal installments.  Specifically, Section 1.05 of the Lease, which is comprised of three sentences,[8] provides as follows:

---

[3] (Exh. 1, MSJ Order, at 2).

[4] (*Id.*)

[5] (*Id.*) (citing Lease, §§ 2.02, 2.03).

[6] (*Id.* at 3) (citing Lease, § 2.04(A)).

[7] (*Id.* at 4-5) (citing Lease, § 1.05).

[8] The three sentences of Section 1.05 are not numbered in the Lease, but are so numbered herein for purposes of explaining Montgomery Park's disagreement with the District Court's decision. In its Leave Order, the District Court similarly referenced these three sentences by number in explaining its ruling. (Exh. 2, Leave Order at 2-3).

3

'**Limited Right of Early Termination:** **[1]** Tenant shall have a one-time, *conditional* right to terminate this Lease (the "Termination Right"), effective on that date which is eight years after the Commencement Date (the "Termination Effective Date"), upon Tenant's *strict compliance* with *all* of the following requirements:

> (a) Tenant shall deliver to Landlord (not later than ten (10) months prior to the Termination Effective Date (such notice deadline, the "Termination Notice Deadline")) a written notice (the "Termination Notice") stating that Tenant elects to exercise this Termination Right; and

> (b) Tenant shall pay to Landlord (50% simultaneously with delivery of the Termination Notice and the remaining 50% balance at least three (3) months prior to the Termination Effective Date), a termination fee (the "Termination Fee") *equal to ten (10) times the monthly installment (which will be in effect as of the Termination Effective Date) of Rent* (including without limitation, all Additional Rent on account of Taxes or Operating Expenses).

**[2]** *If (and only if)* Tenant both timely delivers the Termination Notice and timely pays the Termination Fee *as required above,* then the Lease will be terminated effective on the Termination Effective Date.

**[3]** Tenant shall not have the right to terminate this Lease *if* it fails either timely to deliver the Termination Notice or timely pay the Termination Fee. . . .'

(Exh. 1, MSJ Order at 4-5) (quoting Lease, § 1.05) (emphasis added).

**B.    NCO's Failure to Exercise Its Limited Right of Early Termination**

By letter dated May 12, 2010, NCO provided the required 10-month's prior written notice of its intention to exercise the Limited Right of Early Termination

4

under Section 1.05 of the Lease.[9]  On that same day, NCO paid Montgomery Park $779,964.15, representing 50% of the requisite Termination Fee[10] – a calculation not disputed by the parties.  When the second installment of the Termination Fee became due on December 15, 2010, however, NCO paid Montgomery Park only $697,100.55.[11]  That amount represented what NCO claimed to be the second 50% of the Termination Fee after deducting a "Janitorial Allowance"[12] of $79,067.70, to which it claimed to be entitled.[13]

By letter dated February 9, 2011, Montgomery Park notified NCO that its attempt to exercise the Limited Right of Early Termination under the Lease was ineffective, and that the Lease remained in full force and effect. By unilaterally deducting the Janitorial Allowance from the second installment payment of the Termination Fee – a deduction that the District Court found to be improper[14] – NCO failed to strictly comply with the conditions of early termination.  Shortly

---

[9] (*Id.* at 5).

[10] (*Id.* at 6).

[11]  (*Id.*)

[12] During the Lease, NCO had the option of accepting janitorial services for its leased Premises from the Landlord, or procuring janitorial services at its own cost and accepting a "Janitorial Allowance." (*Id.* at 4) (citing Lease, § 6.01). The "Janitorial Allowance," as defined in the Lease equals "$1.00 per usable square foot per annum towards the cost incurred in obtaining janitorial services." (*Id.*)

[13] (*Id.* at 6).

[14] (*Id.* at 21-22).

5

thereafter, on February 28, 2011, NCO filed suit against Montgomery Park seeking, *inter alia*, a declaratory judgment that it had properly terminated the Lease early.[15]   Several months later on May 31, 2011, NCO vacated the leased premises.[16]  Despite demand, NCO has since refused to pay Rent due and owing to Montgomery Park under the Lease.[17]   In its Counterclaim, Montgomery Park seeks: (1) a declaratory judgment that NCO failed to terminate the Lease, which remains in full force and effect; and (2) damages for NCO's ongoing default of its Rent obligations under the Lease.[18]

## C.     The District Court's Ruling

After full discovery, the parties filed cross-motions for partial summary judgment on various claims and issues in the case.[19]   On the pertinent early termination issue, NCO moved for summary judgment on the grounds that, as a matter of law, it was entitled to deduct the Janitorial Allowance from the

---

[15]  (*Id.* at 6-7). Although NCO's Complaint brings additional claims arising out of genuinely disputed factual allegations that Montgomery Park overcharged NCO for Rent, those claims (which will be tried) are not at issue in this interlocutory appeal. (*Id.*); (Exh. 2, Motion for Leave at 4).

[16]  (Exh. 1, MSJ Order at 6).

[17]  (*Id.*).

[18]  (*Id.* at 6-7).

[19]  (*Id.* at 7).

6

Termination Fee as a "credit against rent."[20]  After extensive briefing, the District

Court rejected NCO's interpretation of the Lease that formed the sole basis of its

summary judgment motion on the early termination issue, as follows:

> On the face of the Lease, Montgomery Park's annual credit
> obligation with respect to the Janitorial Allowance is
> unambiguously separate from NCO's monthly rent obligation . .
> . . Thus, the Court finds that NCO did not properly calculate the
> required Termination Fee.

(Exh. 1, MSJ Order at 22).

Despite finding that NCO failed to pay the Termination Fee in the amount

required by the Lease, the District Court held that, "The Lease does not make clear

that proper calculation of the Termination Fee is a required condition of early

termination."[21]  Notwithstanding that sentence [1] of Section 1.05 demanded *"strict*

*compliance"* with *"all"* requirements, including payment of a Termination Fee

*"equal to ten (10) times the monthly installment . . . Rent . . .,"* the District Court

found that NCO's failure to pay the Termination Fee in the proper amount was not

fatal to its exercise of the early termination option.  While conceding that sentence

[2] (which requires NCO to timely pay "the Termination Fee *as required above"*),

"may suggest proper calculation [of the Termination Fee] should be considered a

---

[20] (*Id.* at 20-22).

[21] (*Id.* at 26).

7

condition to the right to terminate," the Court found that "the immediate following clause [sentence 3] does not."[22]

Based on its conclusion that "the language of the provision does not clearly reflect the parties' intent to include the calculation as a condition," the District Court held that "a more flexible interpretation is appropriate under Maryland law."[23]    Relying primarily on the decision of the Maryland Court of Appeals in *Beckenheimer's Inc. v. Alameda Associates*, 327 Md. 536, 611 A.2d 105 (1992), the District Court held that the amount of the Termination Fee was a "non-material covenant," not a condition precedent to the exercise of the termination option. [24] Thus, even though NCO indisputably failed to pay the Termination Fee in the correct amount, the District Court found as matter of law that NCO, nevertheless, terminated the Lease early.

---

[22] Because sentence 3 did not repeat the phrase "as required above," the District Court concluded that the only conditions of the early termination option are: timely delivery of the Termination Notice and timely payment of the Termination Fee. (*Id.* at 26-27).  According to the District Court, the amount of the Termination Fee "equal to ten (10) times the monthly installment of . . . Rent . . ." constitutes a mere "definitional descriptor," not a condition precedent to the exercise of the option. (Exh. 2, Leave Order at 2).

[23] (Exh. 2, Leave Order at 3, n.1); (Exh. 1, MSJ Order at 26-27);

[24] (Exh. 1 at pp. 25-27); (Exh. 2, Leave Order at 2-3).

## QUESTIONS PRESENTED

1.    Whether use of the phrase "strict compliance" with "all" of the conditions of a contractual option precludes a construction of the early termination provision in the Lease that would transform one of its conditions into a non-material covenant for which strict compliance is not required?

2.    Whether even if accepted as correct, the District Court's construction of the Lease presents genuine issues of material fact that preclude the entry of summary judgment in favor of NCO on the issue of early termination of the Lease?

## ARGUMENT

"[Section] 1292(b) provides a mechanism by which litigants can bring an immediate appeal of a non-final order upon the consent of both the district court and the court of appeals." *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1982). Once leave to seek an interlocutory appeal is granted by the District Court, the decision to permit the appeal rests within the sound discretion of this Court. *President and Directors of Georgetown v. Madden*, 660 F.2d 91, 97 (4th Cir. 1981). Under Section 1292(b), an interlocutory appeal is appropriate when (1) the appeal involves "a controlling question of law," (2) as to which there is "substantial ground for difference of opinion," and (3) an immediate appeal "may materially advance the ultimate termination of the litigation." 28 USC § 1292(b); *see also Madden*, 660 F.2d at 96-97. Although Section 1292(b), "should be used

9

sparingly and ... its requirements must be strictly construed,"[25] interlocutory appellate review in an appropriate case is permitted. *See, e.g., Equal Employment Opportunity Comm'n v. Baltimore County*, 747 F.3d 267, 272 (4th Cir. 2014) (permitting an interlocutory appeal under § 1292(b) from an order granting partial summary judgment on liability, but before a trial on damages); *Robertson v. Sea Pines Real Estate Co., Inc.*, 679 F.3d 278, 283-84 (2012) (permitting an interlocutory appeal under § 1292(b) from an order denying motions to dismiss); *Madden*, 660 F.2d at 93-94.

### A.    The District Court's Ruling Presents Narrow Questions of Law As to Which There are Substantial Grounds for Difference of Opinion

At the heart of this case lies a substantial difference of opinion as to the proper interpretation and exercise of contractual options under Maryland law.  As recognized by the Maryland appellate courts, the exercise of a contractual option requires strict compliance (or "exact matching") with its express conditions. *Elderkin v. Carroll*, 403 Md. 343, 354, 941 A.2d 1127, 1133 (2008); *Chesapeake Bank of Maryland v. Monroe Muffler/Brake, Inc.*, 166 Md. App. 695, 718, 981 A.2d 384, 397-98 (2006).  "The question of whether the stipulation in a contract constitutes a condition precedent is one of construction dependent on the intent of the parties to be gathered from the words they have employed." *Chesapeake Bank,*

---

[25] *Myles v. Laffitte*, 881 F.2d 125, 127 (4th Cir.1989).

10

166 Md. App. at 707, 891 A.2d at 391.[26] If the language of the option is clear and unambiguous, strict compliance with its express conditions is required to exercise the option – irrespective of the "relative hardships" to the parties. *Id.*, 166 Md. App. at 721, 891 A.2d at 399 (tenant's mistaken failure to deliver timely notice of its intent to renew a commercial lease resulted in forfeiture of the renewal option).

By not adhering to these principles, the District Court misinterpreted the Lease and misapplied the law. Contrary to the District Court's ruling, payment of the Termination Fee in the required amount is clearly and unambiguously a condition precedent to the exercise of the early termination option. The first sentence of Section 1.05 clearly requires ***"strict compliance"*** with ***"all"*** of the requirements, including payment of the Termination Fee ***"equal to ten (10) times the monthly installment . . . of Rent . . . ."***[27] By operation of this first sentence, the Lease plainly establishes that proper calculation of the Termination Fee is a condition precedent to the exercise of the early termination option for which "strict compliance" is required. This express condition is then reinforced in the second sentence, which reiterates the condition that payment of the Termination Fee must

---

[26] "Although no particular form of words is necessary in order to create an express condition, such words and phrases as "if" and "provided that," are commonly used to indicate that performance has expressly been made conditional, . . . ." *Id.*

[27] (Exh. 1, MSJ Order at 4-5) (citing Lease, § 1.05) (emphasis added).

be made *"as required above"*, referencing the first sentence of the provision.[28] Having thus twice established that payment of the Termination Fee in the proper amount is a condition precedent to early termination of the Lease, the third sentence merely states the converse proposition that a failure to meet the conditions precedent defeats the exercise of the option.[29]

The fact that the third sentence does not repeat the phrase "as required above" does not as a matter of law transform a fatal failure to strictly comply with an express *condition* into a non-material breach of a *covenant*.  The District Court's ruling improperly renders the first two sentences of Section 1.05 of the Lease nugatory in violation of Maryland's cardinal rules of contract construction, so as to frustrate the clearly stated intent of the Lease.[30]

Given the operative language of the Lease, the District Court's reliance on *Beckenheimer's, supra,* is misplaced.  In *Beckenheimer's,* the Court of Appeals

---

[28] (*Id.*)

[29] Stating the obverse proposition in the third sentence of Section 1.05 serves the important purpose of emphasizing the adverse consequences of failing to strictly comply with the conditions precedent clearly set forth in the prior two sentences. Contracting parties often take a "belt-and-suspenders" approach when expressing important contractual provisions that have material consequences to both parties. *Builder's Mutual Ins. Co. v. Parallel Design & Dev. LLC*, 785 F. Supp. 2d 535, 548 n. 6 (E.D. Va. 2011).

[30] "Our rules of contract construction require us, however, to 'avoid interpreting contracts so as to nullify their express terms.'" *Ocean Petroleum, Co., Inc. v. Yanek,* 416 Md. 74, 87-90, 5 A.3d 683, 691-693 (2010).

reversed a trial court's grant of summary judgment in favor of the optionor after finding that the optionee had failed to renew a sublease in accordance with its terms. *Id.*, 327 Md. at 545-46, 611 A.2d at 109. To exercise the renewal option, the Sublessee was required to send timely notice of its election to do so, and, "the net worth of the Sublessee on the date of such notice (as evidenced by the most recent certified financial statements of Sublessee which shall be included in such notice)" was required to be "at least equal to the net worth of Sublessee on the date hereof." *Id.*, 327 Md. at 540, 611 A.2d at 107. In the context of that provision, the Court of Appeals recognized that while the Sublessee's actual net worth at the time of renewal was a substantive condition to the option, the manner in which the Sublessee evidenced its net worth (*i.e.*, the financial statement) was simply a covenant. *Id.*, 327 Md. at 544, 611 A.2d at 113. In compliance with the condition, the Sublessee's net worth actually increased during the term of the sublease and, therefore, "the essence of the net worth requirement, in fact, was satisfied as of the time [the Sublessee] exercised the option." *Id.*, 327 Md. at 553-54, 611 A.2d at 113. In light of this factual finding, the Court of Appeals held that the Sublessee's failure to evidence properly its compliance with the net worth condition by providing the requisite financial statement was a non-material breach of a covenant, not a failure to meet a condition precedent to the renewal. *Id.*

13

In stark contrast to *Beckenheimer's*, both the timing and the monetary amount of the payment of the Termination Fee in this case are plainly conditions precedent for which "strict compliance" is required. Payment of the Termination Fee in the proper amount is a substantive condition of early termination, not merely evidence of compliance with a condition. In *Beckenheimer's*, the Court of Appeals found that, "Unless the agreement makes it clear that the event is required as a condition, it is fairer to apply these more flexible rules." *Id.*, 327 Md. at 555, 611 A.2d at 114. Here, the Lease unequivocally states that payment of the Termination Fee must be both timely and in the correct amount in order to exercise the option, thus demanding strict compliance, not the more flexible approach.

On two separate occasions, Maryland courts have recognized the unique facts and limited holding of *Beckenheimer's*. In *Chesapeake Bank*, *supra*, the Court of Special Appeals rejected a tenant's reliance on *Beckenheimer's* to excuse its failure to provide timely notice of an intent to renew a lease. *Chesapeake Bank*, 166 Md. App. at 716, 891 A.2d at 397. Similarly, in *Elderkin*, *supra*, the Court of Appeals distinguished *Beckenheimer's* and held that an optionee's repeated failures to strictly comply with temporal and monetary conditions of an option resulted in a forfeiture of the option. *Elderkin*, 403 Md. at 355-57, 941A.2d at 1134-35. Like the situations in *Chesapeake* and *Elderkin*, both the timing and the monetary amount of the Termination Fee here are essential and clearly stated pre-conditions

14

to the exercise of the early termination option.  By failing to pay the Termination

Fee in the proper amount, NCO forfeited its option as a matter of law.

Moreover, even if the monetary amount of the Termination Fee is deemed a

mere covenant, the District Court's grant of summary judgment in favor of NCO

would still constitute reversible error.  Regardless of whether payment of the

Termination Fee in the required amount is deemed a condition or a covenant, the

plain language of Section 1.05 demands "strict compliance," not mere substantial

performance, with "all" of its requirements.  As a matter of law, those two

contractual terms cannot be written out of the Lease.[31]  In any event, NCO's

undisputed breach of its obligation to pay the Termination Fee in the correct

amount raises factual questions regarding the materiality of the breach[32] and

NCO's supposed, yet genuinely disputed, "good faith attempt"[33] to strictly comply

with the early termination provision.[34]  Furthermore, inherent in the District

Court's contractual construction is an unsupported factual finding that "an exact

---

[31] *See* n. 30, *supra.*

[32] Ordinarily, "[t]he materiality of a breach of contract is a factual inquiry."
*Wiechart v. Faust*, 419 Md. 306, 316, n.1, 19 A.3d 393, 399 (2011); *Weaver v.
Zenimax*, 175 Md. App. 16, 52, 923 A.2d 1032, 1053 (2007) (same).

[33] (Exh. 1, MSJ Order at 20-21); (Exh. 2, Leave Order at 3).

[34] "A question of good faith 'almost always' presents an issue of material fact."
*Laws v. Thompson*, 78 Md. App. 665, 677, 554 A.2d 1264 (1989) (quoting *Freed
v. Worcester County Dep't. of Soc. Servs.*, 69 Md. App. 447, 456, 518 A.2d 159
(1986)).

15

calculation [of the Termination Fee] was impractical."[35] At best, therefore, the District Court's adoption of *Beckenheimer's* "more flexible" standard creates triable issues of fact that preclude the entry of summary judgment in favor of NCO.

## B.   The Issue of Early Termination Presents "Controlling Questions of Law" Well-Suited to an Interlocutory Appeal

The District Court's misapplication of the narrow holding in *Beckenheimer's* to eviscerate clear contractual language presents controlling questions of Maryland law best resolved in the context of an interlocutory appeal.  None of the pertinent clauses in the key Maryland cases (*Beckenheimer's*, *Elderkin* and *Chesapeake Bank*) expressly used the phrase "strict compliance."  Thus, the courts were left with the task of construing conditional language such as "if" or "provided that" to determine whether the parties intended a requirement to be treated as a condition for which strict compliance was required.  Even then, the courts were reluctant to find covenants in otherwise conditional provisions,[36] and did so only in a situation

---

[35] (Exh. 1, MSJ Order at 26-27); (Exh. 2, Leave Order at 3) (explaining that the District Court's misstated use of the phrase "good faith attempt" was intended to reflect its conclusion that "the plain language of the Lease rendered exact calculation of the Termination Fee impractical.").  Whether phrased in terms of practicalities or subjective intent, the District Court's underlying factual conclusion that NCO could not strictly comply with the option is unsupported by the record and, in any event, genuinely disputed.

[36] *See Elderkin*, 403 Md. at 357, 941 A.2d at 1135; *Chesapeake Bank*, 166 Md. App. at 721, 891 A.2d at 399.

16

where the substantive condition was met, even though the method of evidencing that compliance did not "exactly match" the contractual requirement.[37]

In sharp contrast to all three of those cases, the Lease here leaves no room for doubt. Rather, the Lease expressly mandates *"strict compliance"* with *"all"* of the requirements, including payment of the Termination Fee *"equal to ten (10) times the monthly installment . . . of Rent . . ."*[38] By refusing to give effect to that clear language, the District Court removes the ability of a drafter to use the phrase "strict compliance" to prevent debate regarding the parties' clear intent as to the conditions of a contractual option. If use of the phase "strict compliance" is insufficient to impose an "exact matching" requirement to the performance of an option, then what language would be sufficient? Drafters of leases and option contracts in Maryland must be able to rely on the phrase "strict compliance" to communicate their intent or otherwise open themselves up to the very type of result-driven, second-guessing that Maryland contract law forbids.[39]

---

[37] *See Beckenheimer's*, 327 Md. at 544, 611 A.2d at 113.

[38] (Exh. 1, MSJ Motion at 4-5) (citing Lease, § 1.05)

[39] *See also Holzman v. Fiola Blum, Inc.*, 125 Md. App. 602, 621, 726 A.2d 818, 827 (1999) (Maryland courts will not "rewrite the terms of the contract or draw up a new one . . . merely to avoid hardship or because one party has become dissatisfied with its provisions.").

The District Court's ruling, therefore, has far-reaching effects on Maryland's law pertaining to contractual options that raise controlling questions of law within the meaning of § 1292(b). While this Court recognizes that the complete termination of the litigation is the optimal result for an interlocutory appeal,[40] it has found "controlling questions of law" in circumstances that would not necessarily be fully dispositive of the case. *See, e.g., Equal Employment Opportunity Comm'n v. Baltimore County*, 747 F.3d at 272; *Robertson v. Sea Pines Real Estate Co., Inc.*, 679 at 283-84. As recently observed by one court:

> A growing number of courts have struck a middle ground, finding that a question may be controlling, even though its disposition might not lead to reversal on appeal, if interlocutory reversal might save time for the district court and time and expense for the litigants.

*North Carolina ex rel. Howes v. W.R. Peele, Sr. Trust*, 889 F. Supp. 849, 852 (E.D.N.C. 1995).[41] As recognized by the District Court, an interlocutory appeal here will do precisely that -- save time and expense for all concerned as "a

---

[40] *Fannin v. CSX Transport., Inc.*, 873 F.2d 1438, 1989 W.L. 42583, at * 5 (4th Cir. 1989)(unpublished)("The kind of question **best** adapted to discretionary interlocutory review is a narrow question of pure law whose resolution will be completely dispositive of the litigation, either as a legal or practical matter, **whichever way it goes**.") (emphasis added).

[41] *See also Katz v. Carte Blanche Corp.*, 496 F.2d 747, 755 (3d Cir.1974) ("controlling" was suggested in § 1292(b)'s legislative history to "mean[] serious to the conduct of the litigation, either practically or legally" and that "saving time of the district court and of expense to the litigants was deemed ... a highly relevant factor"). *See also In re Travelstead*, 250 B.R. 862, 865–66 (D. Md. 2000).

resolution in Montgomery Park's favor may prevent the necessity of a second trial on Montgomery Park's counterclaims."[42]

## C.    Immediate Appeal "May Materially Advance the Ultimate Termination of the Litigation"

Finally, interlocutory resolution of the controlling questions of law concerning early termination may materially advance the ultimate termination of this case.   The District Court's summary judgment ruling is dispositive of the parties' competing declaratory judgment claims and Montgomery Park's counterclaim premised on NCO's rent default.   If not appealed now, the parties would be required to proceed to trial only on NCO's overcharge claims.   Even if a final judgment on the overcharge claims is ultimately upheld, a later reversal on the early termination issue would necessitate a remand and a second trial on Montgomery Park's counterclaims.   Granting this Petition, on the other hand, would resolve the central issue of early termination before trial and, potentially obviate the need for a second trial on remand.[43]   By thus allowing all triable issues to be presented in a unified trial, an interlocutory appeal may materially advance the ultimate termination of the case, while serving the interests of justice and promoting judicial economy.

---

[42] (Exh. 2, Leave Order at 4).

[43] (Exh. 2, Leave Order at 6).

19

## CONCLUSION

**WHEREFORE**, for all the foregoing reasons, Petitioner Montgomery Park, LLC respectively requests that this Court grant Petitioner permission to pursue an interlocutory appeal on the referenced controlling questions of law relating to early termination of the Lease.

Respectfully submitted,

John E. McCann, Jr.
John R. Fischel
Ranak K. Jasani
MILES & STOCKBRIDGE P.C.
100 Light Street
Baltimore, Maryland 21202
(410) 727-6464
jmccann@milesstockbridge.com
jfischel@milesstockbridge.com
rjasani@milesstockbridge.com

Howard G. Goldberg
GOLDBERG & BANKS, P.C.
1829 Reisterstown Rd.
Baltimore, Maryland 21208
(443) 940-1340
hgoldberg@gbpclawfirm.com

Counsel for Petitioner, Montgomery Park, LLC

20

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

NCO FINANCIAL SYSTEMS, INC.,       :

     Plaintiff,       :

v.       :       Civil Action No. GLR-11-1020

MONTGOMERY PARK, LLC,       :

     Defendant.       :

### MEMORANDUM OPINION

THIS MATTER is before the Court on three pending motions, including Plaintiff NCO Financial Systems, Inc.'s ("NCO") Motion for Partial Summary Judgment (ECF No. 51); and Montgomery Park, LLC's ("Montgomery Park") Cross-Motion for Partial Summary Judgment (ECF No. 52) and Motion for Leave to File Sur-Reply in Further Opposition to NCO's Motion for Partial Summary Judgment (ECF No. 55).

The issues have been fully briefed and no hearing is necessary. See Local Rule 105.6 (D.Md. 2011). For the reasons that follow, NCO's Motion for Partial Summary Judgment will be granted in part and denied in part, Montgomery Park's Motion for Leave to File Sur-Reply in Further Opposition to NCO's Motion for Partial Summary Judgment will be granted in part and denied in part, and Montgomery Park's Motion for Partial Summary Judgment will be denied.

# I. BACKGROUND[1]

NCO provides clients with business process outsourcing solutions. Montgomery Park provides leasable office space to tenants and other services attendant to its property leasing business. Effective March 15, 2003, NCO and Montgomery Park entered into an Office Lease Agreement ("Lease") at the Montgomery Park Business Center located at 1800 Washington Park Boulevard, Baltimore, Maryland (the "Building").

The Lease states that NCO "leases from [Montgomery Park] . . . approximately 106,267 rentable square feet of floor area" (the "Premises"). (Pl.'s Mem. Supp. Mot. Partial Summ. J. Ex. 2, Attach. 2 ("Office Lease Agreement"), at 9, ECF No. 51-1). The Lease is for a term of twelve years, expiring in March 2015. It is undisputed that an area known to the parties as the "Bridge" is reflected in the approximate rentable square footage stated on the Lease. There is a dispute, however, as to whether the Bridge should have been included.

The Lease also requires NCO to pay rent to Montgomery Park in two components, "Base Rent" plus "Additional Rent," which includes "Real Estate Taxes" and "Operating Expenses." (Id. §§ 2.02, 2.03). The amount of Base Rent plus Additional Rent is based upon the number of "rentable square feet" of NCO's Premises. (Id. §§ 2.01, 2.02, 2.03).

---

[1] Unless otherwise noted, the following facts are taken from the Complaint and the parties' briefings on the instant motions, and are viewed in the light most favorable to the nonmoving party.

2

Under the Lease, the total "rentable square feet" of space is calculated by multiplying the usable square feet of the Premises by 1.12. (Id. § 2.08). Using this formula, the amount of Base Rent Montgomery Park charged NCO was based upon Montgomery Park's representation that the Premises incorporates 94,881 square feet of usable space equaling 106,267 square feet of rentable space.[2] The amount of Additional Rent NCO is obligated to pay under the Lease is based upon its proportionate share of certain expenses for the entire Building. This ratio was determined by the total rentable square footage of the NCO Premises as compared to the total rentable square footage of the entire Building. All of the costs and credits that resulted in the amount of the monthly payment due to Montgomery Park are defined by the Lease as "Rent." (Id. § 2.04(A)) (defining "Rent" as Base Rent plus "[a]ll rental obligations set forth in the foregoing provisions [Real Estate Taxes and Operating Expenses] and elsewhere in this Lease").

In 2010, Montgomery Park, at NCO's request, provided NCO with computer generated design drawings of the Building. Using the industry measurement standards published by the Building Managers and Owners Association ("BOMA"), NCO now contends the Premises actually contained only 100,800 square feet of rentable space, as

---

[2] Pursuant to the Lease, Base Rent for the first year was $15.00 per square foot of rentable space, for a total of $1,594,005. (Office Lease Agreement § 2.01(1)). After the first year of the Lease, the amount of Base Rent increased each year by a percentage determined by the Consumer Price Index published by the United States Department of Labor. (Id. § 2.01(2)).

opposed to the "approximately 106,267 rentable square feet of floor space" claimed by Montgomery Park.

Additionally, the Lease provides NCO the option of accepting janitorial services procured by Montgomery Park or procuring its own janitorial services at its own cost and accepting a "Janitorial Allowance."  The "Janitorial Allowance," as defined in the lease, equals "$1.00 per usable square foot per annum towards the costs incurred in obtaining janitorial services."  (Id. § 6.01).  NCO is responsible for any janitorial cost that exceeds the Janitorial Allowance.  (Id.)  Beginning in April 2008, NCO exercised its right to provide its own janitorial services.

Finally, the Lease includes a provision that gives NCO a "Limited Right of Early Termination" ("Early Termination Provision").  (Id. § 1.05).  Pursuant to this provision, NCO maintained the right to terminate the Lease after eight years, provided that NCO gave written notice to Montgomery Park ten months in advance and paid Montgomery Park a "termination fee," in two fifty-percent installments (at ten months in advance of the early termination and at three months in advance of the early termination) and calculated by ten times the amount of the monthly Rent that would be owed as of the last month of the Lease.  (Id.) The text of the Early Termination Provision states, in pertinent part:

> Tenant shall have a one-time, conditional right to terminate this Lease (the "Termination Right"), effective on that date which is eight years after the Commencement

4

Date (the "Termination Effective Date"), upon Tenant's strict compliance with all of the following requirements:

(a) Tenant shall deliver to Landlord (not later than ten (10) months prior to the Termination Effective Date (such notice deadline, the "Termination Notice Deadline")) a written notice (the "Termination Notice") stating that Tenant elects to exercise this Termination Right; and

(b) Tenant shall pay to Landlord (50% simultaneously with delivery of the Termination Notice and the remaining 50% balance at least three (3) months prior to the Termination Effective Date), a termination fee (the "Termination Fee") equal to ten (10) times the monthly installment (which will be in effect as of the Termination Effective Date) of Rent (including, without limitation, all Additional Rent on account of Taxes or Operating Expenses).

If (and only if) Tenant both timely delivers the Termination Notice and timely pays the Termination Fee as required above, then the Lease will be terminated effective on the Termination Effective Date.

Tenant shall not have the right to terminate this Lease if it fails either timely to deliver the Termination Notice or timely to pay the Termination Fee. Tenant shall not have the right to exercise its Termination Right if, at the time of exercise, Tenant is in default hereunder in the payment of Base Rent and if such default continues uncured beyond the applicable period of grace. . . .

(Id.)

On March 11, 2010, NCO sent a letter to Montgomery Park notifying Montgomery Park of its election to terminate the Lease pursuant to its Limited Right of Early Termination. On May 12, 2010, NCO sent another letter to Montgomery Park confirming its earlier communication concerning the same. On that same day, NCO paid Montgomery Park $779,964.15, representing fifty-percent of the

Termination Fee as calculated by the Base Rent as well as an estimate of the increase in Additional Rent. On or before December 15, 2010, NCO paid Montgomery Park an additional $697,100.55, representing what it claimed to be the second fifty-percent of the Termination Fee after deducting $79,067.70 as a janitorial credit, to which it claims it is entitled.

Montgomery Park notified NCO, by letter dated February 9, 2011, that its attempt to exercise the Limited Right of Early Termination under the Lease was ineffective. Montgomery Park stated that its year-end accounting review concluded that the second amount NCO paid to terminate the lease in connection with the Early Termination Provision was incorrect because the Janitorial Allowance should not have been deducted. Pursuant to its position that it properly terminated the Lease, NCO vacated the Premises on May 31, 2011 and has not paid Rent since. By letter dated July 13, 2011, Montgomery Park gave NCO notice that it considered NCO in default for failure to pay Rent.

NCO filed its Complaint (ECF No. 1) on February 28, 2011, alleging breach of contract (Count I), unjust enrichment (Count II), and fraud (Count III) (collectively, the "Overcharge Claims"),[3] and seeks a declaratory judgment regarding its purported exercise of rights under the early termination clause of its lease (Count IV). In its counterclaim, Montgomery Park seeks a declaratory

---

[3] These claims are all premised upon the allegation that the rentable square footage of the Premises is less than what is stated in the Lease.

6

judgment that the Lease was not terminated early and remains in full force and effect. Montgomery Park also seeks contract damages for NCO's default under the Lease for failure to pay Rent.

Pursuant to Local Rule 105.2(c), the parties proposed, and this Court adopted, a briefing schedule for the parties to submit motions for partial summary judgment. (ECF No. 50). On May 16 2013, NCO filed the instant Motion seeking summary judgment on the following facts and legal issues in this case: (1) the Premises, as defined by the Lease, does not include the area known to the parties as the "Bridge," (2) upon rendering the second fifty-percent of the Termination Fee, less the Janitorial Allowance before December 15, 2011, NCO properly terminated the Lease under the Early Termination Provision, and (3) the Parties agreed that the number of rentable square feet to be included in the Lease would be determined by using the then existing office measurement standard of BOMA.

On June 17, 2013 Montgomery Park filed its Opposition to NCO's Motion and Cross-Motion for Partial Summary Judgment. (ECF No. 52). In its Cross-Motion for Partial Summary Judgment, Montgomery Park seeks judgment barring NCO's Overcharge Claims pursuant to the statute of limitations. NCO filed a Reply and Response in Opposition to Montgomery Park's Cross-Motion for Partial Summary Judgment (ECF No. 53). Montgomery Park filed a Reply. (ECF No. 54).

Montgomery Park then moved for Leave to File a Sur-Reply seeking to address an "operating expenses" argument it contends was untimely advanced by NCO for the first time in NCO's Reply in Support of its Motion for Partial Summary Judgment, and seeking to address several misstatements of the record. (ECF No. 55). NCO opposed Montgomery Park's Motion arguing the "operating expenses" theory was implicit in its opening Memorandum concerning the Janitorial Allowance at issue in this case. (ECF No. 56). Montgomery Park filed a Reply to NCO's opposition. The Motion for Leave to File a Sur-Reply is now ripe for disposition.

## II. DISCUSSION

A.  <u>Standards of Review</u>

1. The **Summary Judgment Standard**

Under Federal Rule of Civil Procedure 56, the Court must grant summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a).

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the non-moving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986) (citing <u>Adickes v. S. H. Kress & Co.</u>, 398 U.S. 144, 157 (1970)). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986). "[T]he mere existence of some alleged

8

factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247–48.

A "material fact" is a fact that might affect the outcome of a party's case. Id. at 248; JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001).

A "genuine" issue concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. Anderson, 477 U.S. at 248. Rule 56(c) requires the nonmoving party to go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The nonmoving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985).

Because this case arises under the Court's diversity jurisdiction, the substantive law to be considered is that of the

state in which the action arose.  Estrin v. Natural Answers, Inc.,
103 F.App'x 702, 704 (4th Cir. 2004).  In this case, Maryland law
applies.

**2. Contract Interpretation Standard**

"Leases are contracts and, as such, are to be construed by
application of the well established [sic] rules of contract
interpretation."  Chesapeake Bank of Md. v. Monro Muffler/Brake,
Inc., 891 A.2d 384, 390 (Md.Ct.Spec.App. 2006).  Contract
interpretation is a matter of law, not fact.  Sy-Lene of Wash.,
Inc. v. Starwood Urban Retail II, LLC, 829 A.2d 540, 544 (Md.
2003).  The parol evidence rule precludes parties from attempting
to contradict written terms of an agreement through the use of
prior oral or written declarations.  Sagent Tech., Inc. v. Micros
Sys., Inc., 276 F.Supp.2d 464, 468 (D.Md. 2003).  Parol evidence
"is only admissible after the court finds the contract to be
ambiguous."  Sy-Lene, 829 A.2d at 544.

"In determining whether a writing is ambiguous, Maryland has
long adhered to the law of the objective interpretation of
contracts."  Calomiris v. Woods, 727 A.2d 358, 363 (Md. 1999).
Under the objective view, a contract is only ambiguous when it is
susceptible to more than one meaning by a "reasonably prudent
person."  Id.  "The terms of the contract must be interpreted in
context and be given their ordinary and usual meaning."
Middlebrook Tech, LLC v. Moore, 849 A.2d 63, 79 (Md.Ct.Spec.App.
2004).

If a contract is unambiguous, its terms will not be overridden by what the parties thought or intended the contract to mean when they executed it. Id.

> [W]hen the language of the contract is plain and unambiguous there is no room for construction, and a court must presume that the parties meant what they expressed. In these circumstances, the true test of what is meant is not what the parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant. Consequently, the clear and unambiguous language of an agreement will not give away to what the parties thought that the agreement meant or intended it to mean.

Gen. Motors Acceptance Corp. v. Daniels, 492 A.2d 1306, 1310 (Md. 1985).    Thus, evidence of the parties' prior intentions and negotiations are not admissible. Id.

B.    **Analysis**

   1.    BOMA Office Measurement Standards

The Court finds that even if it were to consider parol evidence under the "conditional delivery" exception to the parol evidence rule, there exists a genuine dispute of material fact as to whether the parties agreed to be bound by BOMA.   Accordingly, NCO is not entitled to summary judgment on this issue.

The Lease is silent on the standards used to arrive at the number of usable square feet of the Premises for the purposes of calculating rent.  It is undisputed, however, that before the Lease was finalized and signed, the parties agreed that the number of usable square feet of the Premises would be determined pursuant to the BOMA office measurement standard.  As a result, NCO argues the

11

effectiveness of the Lease was conditioned on Montgomery Park having measured the Premises according to the BOMA standard. The Court disagrees.

The notion of conditional delivery has long been recognized in Maryland – that "the parol evidence rule does not prevent the introduction of parol evidence indicating that the written instrument was not to become effective as an instrument, until a prior condition or event had occurred." Foreman v. Melrod, 263 A.2d 559, 562 (Md. 1970) (citing Jenkins v. First Nat'l Bank, 106 A. 174 (Md. 1919); Ricketts v. Pendleton, 14 Md. 320 (1859)); see also Saliba v. Arthur Fulmer Charlotte, Inc., 270 A.2d 656, 659 (Md. 1970) and Smith v. Rosenthal Toyota, Inc., 573 A.2d 418, 422 (Md.Ct.Spec.App. 1990) (allowing parol evidence to establish that agreements signed prior to the conditions set forth were not to become effective until the condition or event had occurred). Even where there is an integration clause, as there is here (Office Lease Agreement § 17.01), "[w]here the parties to a written agreement agree orally that performance of the agreement is subject to the occurrence of a stated condition, the agreement is not integrated with respect to the oral condition." Smith, 573 A.2d at 422 (quoting Restatement (Second) of Contracts § 217 (1981)). The written document must not be sufficient standing alone, to determine that "the contract never came into existence by reason of the failure of the condition." Saliba, 270 A.2d at 660 (quoting Brantley on Contracts 304 (2d Ed. Rev. 1922) (internal quotation

marks omitted); see also Smith, 573 A.2d at 422 (discussing the principle of allowing parol evidence of oral conditions).

NCO concedes the occurrence of the measurement was a condition precedent to the signing of the Lease.  Pursuant to that agreement, the measurements were concluded and inserted into the Lease prior to NCO signing it.  Simply because the approximate rentable square footage was determined before the Lease was executed, however, does not mean the occurrence of that measurement was a condition precedent to the legal effectiveness of the Lease itself.[4] Nevertheless, even if the Court were to look beyond the four corners of the Lease, the parol evidence creates a material dispute of fact as to whether the parties agreed to be contractually bound by BOMA.

NCO first directs the Court's attention to the August 1, 2002 Letter of Intent, which requires that the "[t]enant area shall be measured in accordance with BOMA standards of measurement." (Pl.'s Mem. Supp. Mot. Partial Summ. J. Ex. 2, Attach. 1, at 1). According to the deposition testimony of Montgomery Park's architect, Peter Notari, and its Director of Development at the time, Peter Garver, Montgomery Park did in fact provide the measurement of the Premises pursuant to the BOMA standards of

---

[4]  NCO argues Section 2.08 of the Lease provides that the formula for determining the number of Rentable Square Feet required the number of Usable Square Feet to be determined before the execution of the Lease.  When viewed in the context of the Lease in its entirety, however, Section 2.08 seems to indicate only how the approximate rentable square footage was calculated for purposes of arriving at the Rent due under the Lease.

measurement.   (Notari Dep. 45:4-7, Dec. 20, 2012); (Garver Dep. 30:15-31:2, Dec. 11, 2012).   The parties, however, later consciously agreed not to be contractually bound by the BOMA standard in the lease.   (See Mem. Opp'n Pl.'s Mot. Partial Summ. J. & Supp. Cross-Mot. Partial Summ. J. ["Def.'s Mem. in Opp'n"] Ex. 2, at 64) (appearing to be a prior draft of the Lease in which a specific reference requiring the parties to be bound by BOMA in section 2.08 is stricken). Accordingly, NCO is not entitled to summary judgment that the Parties agreed the number of rentable square feet to be included in the Lease would be determined by using the then-existing office measurement standard of BOMA.

### 2.   The Bridge

The Court concludes, as a matter of law, that the Lease clearly and unambiguously excludes the Bridge from its Premises and, therefore, the area should not have been considered rentable square footage.   Accordingly, NCO will be granted summary judgment with respect to this issue.

It is undisputed that an area known to the parties as the "Bridge" is reflected in the approximate rentable square footage stated on the Lease and referred to as the "Premises."   Montgomery Park argues, because the "approximately 106,267 rentable square feet" indisputably includes the square footage of the Bridge, this is evidence that the Bridge is part of the Premises as defined in the Lease.   The Court disagrees.

14

After identifying the "approximately 106,267 rentable square feet" as the "Premises," the Lease then defines Premises as "(i) Section 2 on the first floor and (ii) Sections 1, 2, and 4 . . . on [the] second floor . . . ." (Mem. Supp. Mot. Partial Summ. J. Ex. 2, Attach. 2, at 9). Thus, the rental square footage identified as the Premises should include only those designated areas of the building intended to be part of NCO's Premises as defined in the Lease. The parties' agreement that the Bridge is included in the calculation of rentable square footage is not evidence that it should have been included or that either party knew it was included.

The written definition of the Premises then identifies Exhibit A-1 as a more particular illustration of the Premises. (Id.) Montgomery Park further argues the drawings, attached to the Lease as exhibits and purporting to further define the Premises, creates both patent and latent ambiguities such that the Court must consider parol evidence to glean the parties' intent with respect to whether the Bridge was intended to be part of the Premises. The Court similarly disagrees.

Page 4 of Exhibit A-1 is identified as "NCO Call Center – Second Floor Key Plan." It indicates cross-hatching in Sections marked 1, 2, and 4, and the absence of cross-hatching in Sections marked 3 and 5. The Bridge, which appears as a narrow area that connects Sections 4 and 5, is not cross-hatched. The cross-hatching directly corresponds to those sections identified in the

15

written definition.    Thus, under the clear language of the Lease, the Court finds that a reasonable person would interpret the cross-hatching as intending to define the leased Premises.

Page 5 of Exhibit A-1 is a more detailed drawing of the entire second floor of the building.  The drawings on pages 4 and 5 appear to work together.   Page 4 first identifies and defines the designated areas of the building included in NCO's Premises and page 5 then compliments with additional architectural detail.  Page 5 of the Exhibit does not, however, identify or designate which portions of the second floor further define the Premises.   Even though the drawing on page 5 includes the Bridge and portions of Sections 3 and 5 that are not defined in the written definition of the property, there is no ambiguity when considering pages 4 and 5 together.

Moreover, Exhibit G of the Lease, titled "Space Plans for NCO Premises," consists of a Cover Sheet, a First Floor and Second Floor Life Safety Plan, four Architectural Plans and Reflected Ceiling Plans for each of the areas of the building designated as being part of the Premises in the written definition, and four wall types and toilet room elevations sheets.  In the lower right hand corner of each page is a miniature drawing identical to the one at page 4 of Exhibit A-1.  In each instance, the corresponding section is identified through shading similar to the cross-hatching appearing on the original diagram at page 4 of Exhibit A-1.  The Bridge is never identified or shaded.

16

"In interpreting a contract provision, [the Court] look[s] to the entire . . . agreement, not merely a portion thereof." Nova Research, Inc. v. Penske Truck Leasing Co., 952 A.2d 275, 283 (Md. 2008). Thus, the Court must consider the written description of the Premises together with Exhibits A-1 and G. Neither the written description nor any of the drawings of the Premises in the Lease include the Bridge. As such, the Lease is not subject to more than one reasonable interpretation with regard to whether the Bridge is part of NCO's premises.

An ambiguity cannot be created from extrinsic evidence when the contract is clear on its face. See United Capitol Ins. Co. v. Kapiloff, 155 F.3d 488, 495 (4th Cir. 1998) ("In the event of ambiguity, Maryland courts consult extrinsic evidence . . . ."). To the extent that Montgomery Park relies on inadmissible extrinsic evidence to identify ambiguities in the Lease, those arguments will not be addressed.

Finally, Montgomery Park contends that the Bridge's inclusion in the leased Premises is not a "material fact" that might affect the outcome of case and, therefore, NCO is not entitled to summary judgment. This argument, however, is misplaced. NCO seeks partial summary judgment with respect to this one very narrow issue. How this issue impacts the merits of NCO's underlying case does not bear on whether it is entitled to summary judgment on that narrow issue. Only disputes over material facts that might affect the outcome of whether the Bridge is included in the leased Premises

17

under the governing law will properly preclude the entry of summary judgment on this issue.

After considering the parties' arguments, the written definition of Premises used in the Lease, and Exhibits A-1 and G, as attached to the Lease, the Court finds that the Lease clearly and unambiguously does not include the Bridge as part of NCO's Premises. Accordingly, NCO is entitled to summary judgment declaring the same.

### 3. Termination Fee

#### a. Motion for Leave to File Sur-Reply

The Court finds good cause to allow Montgomery Park leave to file a sur-reply with respect to NCO's operating expenses argument.

Unless otherwise ordered by the court, sur-reply memoranda are not permitted to be filed. See Local Rule 105.2(a) (D.Md. 2011). "Surreplies may be permitted when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply." Khoury v. Meserve, 268 F.Supp.2d 600, 605 (D.Md. 2003), aff'd, 85 F.App'x 960 (4th Cir. 2004).

Montgomery Park contends NCO's claim that the costs of providing tenant janitorial services was an "Operating Expense" within the meaning of the Lease and constituted, therefore, a form of "Additional Rent" was raised for the first time in NCO's Reply to Montgomery Park's Opposition to NCO's Motion for Partial Summary Judgment thereby necessitating a sur-reply on that issue. The Court agrees.

18

NCO argued, in its Motion for Partial Summary Judgment, the Janitorial Allowance was a "credit against rent" due under the Lease. In its Opposition to Montgomery Park's Motion for Leave to File a Sur-Reply, NCO concedes that it did not make this argument specifically in terms of "Operating Expenses" and "Additional Expenses" under the Lease, but maintains that the distinction is immaterial. (Mem. Opp'n Montgomery Park's Mot. Leave to File Sur-Reply 2, ECF No. 56-1). NCO states that implicit in its "credit against rent" argument is the concept of the Janitorial Allowance qualifying as a component of rent through the operating expense provision in the Lease. (Id. at 3).

The terms "Operating Expenses," "Additional Rent," and "Rent" are specific terms defined in the Lease. The term "credit against rent" is a concept NCO asks the Court to read into the Lease. In its Reply to Montgomery Park's Opposition, NCO first articulates its right to take a credit against rent specifically under the operating expense provision in the Lease. Moreover, the phrase "operating expense" never even appears in NCO's Motion for Partial Summary Judgment.

In addition to addressing NCO's operating expenses argument, Montgomery Park seeks to use its sur-reply to address alleged misstatements of the record in NCO's Reply. Where the proposed sur-reply, however, does not attempt to address matters presented for the first time in the opposing party's reply and instead seeks merely to re-open briefing on the issues raised, the motion for

leave to file a sur-reply will be denied. See Interphase Garment Solutions, LLC v. Fox Television Stations, Inc., 566 F.Supp.2d 460, 467 (D.Md. 2008) (denying a motion to file surreply because it sought to re-open briefing and challenge Defendants' explanations of cited case law).

Accordingly, Montgomery Park's Motion for Leave to file a Sur-Reply will be granted with respect to NCO's operating expenses argument but denied with respect to its allegations that NCO misstated the record. Exhibit 1 to Montgomery Park's Motion for Leave to File Sur-Reply (ECF No. 55-1) will be deemed filed, and only the portion addressing NCO's untimely operating expenses argument will be considered in connection with the Court's decision on the parties' motions for summary judgment.

### b. Analysis

NCO seeks a finding as a matter of law that upon rendering the second fifty-percent of the Termination Fee, less the Janitorial Allowance before December 15, 2011, it properly terminated the Lease under the Early Termination Provision. Montgomery Park seeks a finding that, by deducting the annual Janitorial Allowance from the Termination Fee, NCO did not pay the Termination Fee as required by the Lease, and thus, the Lease remains in full force and effect. The Court finds that despite NCO's improper calculation of the Termination Fee, its good faith attempt to strictly comply with the conditions precedent set out in the Early

Termination Provision of the Lease amounts to proper performance with respect to effectuating its early termination option.

> **(1) The Janitorial Allowance Should Not Have been Included in the Calculation of the Termination Fee**

Two separate "components" of rent are detailed in Article II of the Lease.   Section 2.01 sets out "a minimum annual rent," referred to as "Base Rent."   (Office Lease Agreement at 19). Section 2.04(A) identifies all rental obligations, outside of Base rent, as "Additional Rent."   Sections 2.02 and 2.03 then identify the additional rental obligations to include Real Estate Taxes and Operating Expenses.

When read together, Sections 2.03 and 2.04(A) clearly and unambiguously set forth "Operating Expenses" as a component of rent.  "Operating Expenses" are defined as "all expenses, costs and disbursements of every kind and nature **incurred** in connection with the ownership, management, maintenance, repair and operation of the Property, including but not limited to. . . **common area janitorial services**."  (Id. § 2.03(A)) (emphasis added).  Conversely, Section 6.01 states that:

> [L]andlord shall procure janitorial services for Tenant at the Premises at Tenant's request, unless Tenant contracts (at Tenant's election) with its own janitorial service provider; provided, however, Landlord shall provide Tenant with an annual janitorial allowance (the "Janitorial Allowance") of up to $1.00 per usable square foot per annum **towards the costs incurred** in obtaining janitorial services.

(Id. § 6.01) (emphasis added).

Based on the plain language of the Lease, Operating Expenses include only common area janitorial costs.  The Operating Expenses component of Rent is silent on the issue of tenant-specific janitorial costs, which are plainly addressed in a separate section that is specific with respect to how those costs will be allocated between the parties.  Thus, on the face of the Lease, Montgomery Park's annual credit obligation with respect to the Janitorial Allowance is unambiguously separate from NCO's monthly rent obligation.

Unlike "Rent," which is the payment obligation of NCO, the Janitorial Allowance is a credit obligation of Montgomery Park **toward the costs incurred** in obtaining janitorial services whether procured by the Landlord or the Tenant.  NCO vacated the Premises on May 31, 2011.  Under circumstances in which neither Montgomery Park nor NCO were no longer incurring the costs of janitorial services, NCO is not entitled to the Janitorial Allowance.  Thus, the Court finds that NCO did not properly calculate the required Termination Fee.  To the extent that NCO relies on inadmissible extrinsic evidence in support of its position, those arguments will not be addressed.

> (2)  **NCO Did Properly Exercise its Early Termination Option**

Montgomery Park argues, by improperly deducting the annual Janitorial Allowance from the Termination Fee, NCO failed to effectuate its early termination option because it did not strictly

Appeal: 14-274    Doc: 2    Filed: 06/06/2014    Pg: 50 of 67

comply with the Early Termination Provision's conditions precedent. The Court disagrees.

The words and phrases specifically employed in Section 1.05 of the Lease clearly and unambiguously provide that exercise of the early termination option requires strict compliance with specified conditions precedent:[5] "Tenant shall have a one-time, **conditional** right to terminate"; "upon Tenant's **strict compliance** with all of the following requirements"; "**[i]f (and only if)** Tenant both timely delivers . . . and timely pays"; and "Tenant shall not have the right to terminate this Lease if it fails . . . ." (Office Lease Agreement at § 1.05) (emphasis added).

Under Maryland Law, the exercise of an option must be in "exact accord with the terms of the option." Foard v. Snider, 109 A.2d 101, 106 (Md. 1954); see also Katz v. Pratt St. Realty Co., 262 A.2d 540, 547 (Md. 1970) ("It is well settled that to be valid, the exercise of an option must be unequivocal and in accordance with the terms of the option."). Maryland courts have differed, however, as to the extent in which the exact matching requirement

---

[5] See Chesapeake Bank of Md., 891 A.2d at 391 ("The question whether the stipulation in a contract constitutes a condition precedent is one of construction dependent on the intent of the parties to be gathered from the words they have employed . . . . Although no particular form of words is necessary in order to create an express condition, such words and phrases as 'if' and 'provided that,' are commonly used to indicate that performance has expressly been made conditional . . . .") (citing Chirichella v. Erwin, 310 A.2d 555, 557 (Md. 1973) (internal quotation marks omitted)).

is applied when determining whether an option has been permissibly exercised. <u>Elderkin v. Carroll</u>, 941 A.2d 1127, 1133 (Md. 2008). Most recently, in <u>Elderkin</u>, the Maryland Court of Appeals outlined three inquiries for determining whether the exercise of an option is valid:

> (1) [I]s the acceptance in accordance with the terms of the offer? (2) Do the non-matching terms fall under any of the exceptions enunciated in <u>Bramble</u>? (3) Where the terms are not in accordance, was it merely an 'additional term' that could be rejected by the optionor or was it a non-material covenant rather than a condition?

<u>Id.</u> at 1135.

It was in <u>Beckenheimer's Inc v. Alameda Associates Ltd. P'ship</u>, 611 A.2d 105, 109 (Md. 1992) the Maryland Court first made the distinction between an absolute condition, which would have to be fulfilled in order to trigger the acceptance of an option, or a mere covenant, which would not bar an otherwise valid attempt to exercise an option. In <u>Beckenheimer's Inc.</u>, the trial court granted summary judgment to the optionor after finding that the optionee had failed to renew the sublease in accordance with its terms. <u>Beckenheimer's Inc.</u>, 611 A.2d at 109. The optionee gave timely notice of its intent to renew the lease, but failed to include a statement of financial worth, a requirement which was included in the condition provision but separated from the condition language by parentheses. <u>Id.</u> at 107-08. On appeal, the Court of Appeals of Maryland found the requirement to include a financial statement with the notice of renewal to be a covenant and

24

not a condition, and further found the optionee's failure to include the financial statement a non-material breach. Id. at 113-14.

Here, there are two express conditions in the Early Termination Provision: (1) NCO's delivery to Montgomery Park of a written notice, and, (2) payment of a termination fee.[6] (See Office Lease Agreement at § 1.05). It is undisputed that NCO both timely delivered the Termination Notice and timely paid the Termination Fee.

Montgomery Park contends the language of the Early Termination Provision describing the termination fee as being equal to ten times the monthly installment of Rent is part of the condition precedent to timely pay. Having unilaterally rejected the first two exceptions to the "exact matching" requirement laid out in Elderkin, the Court now considers whether proper calculation of the termination fee was a required condition, or a non-material covenant, which if not matched exactly, will not bar NCO's early termination. "Unless the agreement makes it clear that the event is required as a condition, it is fairer to apply . . . more flexible rules." See Beckenheimer's Inc., 611 A.2d at 114.

---

[6] "[W]hether expressly declared to be so or not," time is of the essence in option contracts, "both in law and in equity." Beckenheimer's Inc., 611 A.2d at 111 (quoting Foard v. Snider, 109 A.2d 101, 105-06 (Md. 1954)). Thus, despite the durational terms being separated from the conditions by parentheses, the Court finds all durational requirements to be express conditions.

The Court concludes that the Lease does not make clear that proper calculation of the termination fee is a required condition of early termination.  Section 1.05 of the Lease contains competing clauses with respect to the required conditions.  First, the provision indicates: "If (and only if) Tenant both timely delivers the Termination Notice and timely pays the Termination Fee **as required above**, then the Lease will be terminated effective on the Termination Effective Date."  (Office Lease Agreement at § 1.05). The Next sentence, however, indicates: "Tenant shall not have the right to terminate this Lease if it fails either timely to deliver the Termination Notice or timely to pay the Termination Fee." (Id.).  While the first clause may suggest proper calculation should be considered a condition to the right to terminate, the immediate following clause does not.

Further, implicit in the fact that the "Additional Rent" component must be calculated into the termination fee, is that the parties would have to engage in an accounting of those additional expenses before ultimately determining appropriate adjustments in the final fee.  Under the interpretation suggested by Montgomery Park, it could dispute any amount estimated by NCO to be the proper termination fee in the event NCO's calculation did not match identically to its own.  The Court concludes that such an interpretation would lead to an "absurd or unreasonable result," and, therefore, declines to adopt Montgomery Park's interpretation. See Chesapeake Bank of Md., 891 A.2d at 401 {quoting Middlebrook

26

Tech, LLC v. Moore, 849 A.2d 63, 79 (Md.Ct.Spec.App. 2004)) ("[T]he court's interpretation should not permit an absurd or unreasonable result."). Thus, the Court will apply a more flexible standard than "exact matching" in determining whether NCO effectuated its Early Termination option.

NCO timely delivered to Montgomery Park a termination notice accompanied by $779,964.15, representing fifty-percent of the Termination Fee as calculated by the Base Rent as well as an estimate of the increase in Additional Rent. NCO then timely delivered to Montgomery Park $697,100.55, representing what it estimated to be the second fifty-percent of the Termination Fee, albeit less the Janitorial Allowance the Court previously found it was not entitled to take. The Court, however, concludes that under these facts, NCO's good faith attempt to strictly comply with the conditions precedent amounts to proper performance of the Early Termination option, and that NCO's failure to properly calculate the Termination Fee was a non-material breach subject to remedy. Thus, there is no genuine dispute of material fact, and the Court finds NCO properly terminated the Lease under the Early Termination Provision without prejudice to Montgomery Park's right to reconcile the disparities in the final amount.

### 4. Overcharge Claims

The Court finds that Maryland's three-year statute of limitations does not bar NCO's Overcharge Claims.

Montgomery Park argues NCO could have discovered the discrepancy in rentable square footage prior to executing the Lease in October 2002, or anytime during its tenancy, through the exercise of due diligence. Thus, Montgomery Park argues, Counts I, II, and III of NCO's Complaint are barred by Maryland's statute of limitations. The Court disagrees.

The parties agree that the Overcharge Claims are governed by Maryland's three-year statute of limitations.[7] The parties also agree that Maryland's discovery rule applies.[8] This lawsuit was filed on February 28, 2011. Thus, NCO's Overcharge Claims were timely filed unless Montgomery Park can establish there is no dispute NCO knew, or through the exercise of reasonable diligence, should have known, it was being overcharged for its Rent on or before February 28, 2008.

Montgomery Park does not suggest that NCO was actually aware of its cause of action, but only that NCO had inquiry notice of the facts giving rise to its overcharge claims prior to February 28, 2008. "Being on inquiry notice means having knowledge of circumstances which would cause a reasonable person . . . to

---

[7] See Md. Code Ann., Cts. & Jud. Proc. § 5-101 (West 2013); see also Singer Co., Link Simulation Sys. Div. v. Balt. Gas & Elec. Co., 558 A.2d 419, 424 (Md.Ct.Spec.App. 1989) ("Section 5-101 governs the limitations period applicable to common law contract actions.").

[8] "Under the discovery rule an action is deemed to accrue on the date when the plaintiff knew or, with due diligence, reasonably should have known of the wrong." Supik v. Bodie, Nagle, Dolina, Smith & Hobbs, P.A., 834 A.2d 170, 178 (Md.Ct.Spec.App. 2003) (quoting Doe v. Archdiocese of Wash., 689 A.2d 634, 638 (Md.Ct.Spec.App. 1997)).

undertake an investigation . . . ."  Anne Arundel Cnty. v. Halle Dev., Inc., 971 A.2d 214, 228 (Md. 2009) (citing O'Hara v. Kovens, 503 A.2d 1313, 1324 (Md. 1986) (internal quotation marks omitted)).

Montgomery Park argues (1) use of the word "approximately" in the Lease was, in and of itself, sufficient to put NCO on inquiry notice of an alleged measurement discrepancy; (2) between the date NCO executed the Lease and then later occupied the Premises, it never attempted to measure the Premises; and (3) NCO never verified the accuracy of Montgomery Park's measurement during its tenancy despite having the opportunity to do so.  Thus, Montgomery Park urges the Court to conclude, as a matter of law, that NCO was on inquiry notice of the measurement discrepancy at the time it entered into the Lease and took possession of the Premises.

Despite Montgomery Park's reference to a number of cases from other jurisdictions purporting to be instructive on these facts, this Court finds no controlling precedent and "little consensus in other jurisdictions" on the issue of when a tenant is reasonably on notice of a discrepancy in square footage.  (Mem. Op. at 4, ECF No. 27).  Moreover, this Court previously declined to rule "as a matter of law, that even a sophisticated commercial tenant must be aware of any material discrepancy in square footage from day one."  (See id. at 5).  In renewing this argument at summary judgment, as permitted by the Court, Montgomery Park offers the same set of facts and cites the same case law previously considered by the Court in Montgomery Park's Motion to Dismiss.  To the extent the

29

Court's prior opinion addresses these arguments, it declines to reconsider its previous decision. See Major v. CSX Transp., 278 F.Supp.2d 597, 615 (D.Md. 2003) ("[A] court will not reconsider its own decision rendered at an earlier stage of the litigation absent clear and convincing reasons to reexamine the prior ruling."). The Court, however, agrees that it did in fact invite the development of a factual record demonstrating when NCO gained information that would reasonably put it on notice of such a discrepancy.

In this respect, Montgomery Park relies upon the following facts. NCO is a sophisticated tenant that, in connection with the Lease, was represented by a commercial real estate broker and outside counsel. At no time prior to executing the Lease in October 2002, did NCO attempt to verify the accuracy of the approximate rentable square footage to which it later agreed to in the Lease. NCO agreed to forego a true-up provision in the Lease through which it could have discovered and remedied the purported overcharge.

These facts relate to a time period prior to the Lease being executed. The statute of limitations cannot begin to run prior to the breach See Supik, 834 A.2d at 180 ("[W]e highlight the fact that none of these tolling concepts is even relevant until a plaintiff has sustained a legal injury, and a cause of action has 'arisen.'"); See also Singer Co., 558 A.2d at 425 ("[W]hile the discovery rule may . . . delay the accrual of a contract matter, it cannot operate to make such an action accrue earlier than the date

of the breach . . . ."). Accordingly, Montgomery Park's Motion for Summary Judgment will be denied.[9]

### III. CONCLUSION

For the foregoing reasons, this Court will, by separate Order, GRANT in part and DENY in part NCO's Motion for Partial Summary Judgment (ECF No. 51); GRANT in Part and DENY in Part Montgomery Park's Motion for Leave to File Sur-Reply in Further Opposition to NCO's Motion for Partial Summary Judgment (ECF No. 55); and DENY Montgomery Park's Cross-Motion for Partial Summary Judgment (ECF No. 52).

Entered this 20th day of December, 2013

/s/

_____
George L. Russell, III
United States District Judge

I hereby attest and certify on _____ that the foregoing document is a full, true and correct copy of the original on file in my office and in my legal custody.

FELICIA C. CANNON
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND

By _____ Deputy

---

[9] Having determined the Overcharge Claims are not barred by the statute of limitations, the Court will dispense with analysis of NCO's argument that it is entitled to bring its Overcharge Claims under the "continuing harm" exception to the statute of limitations.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

NCO FINANCIAL SYSTEMS, INC.,        :

     Plaintiff,                   :

v.                                  :     Civil Action No. GLR-11-1020

MONTGOMERY PARK, LLC,               :

     Defendant.                   :

<u>ORDER</u>

For the reasons stated in the foregoing Memorandum Opinion, it is this 20th day of December, 2013, hereby ORDERED:

1. Montgomery Park's Motion for Leave to File Sur-Reply in Further Opposition to NCO's Motion for Partial Summary Judgment (ECF No. 55) is GRANTED in part and DENIED in part.  The Motion is GRANTED with respect to NCO's operating expenses argument and is DENIED with respect to Montgomery Park's allegations that NCO misstated the record;

2. NCO's Motion for Partial Summary Judgment (ECF No. 51) is GRANTED in part and DENIED in part.  The Motion is GRANTED with respect to the following facts and legal issues: (1) NCO's Premises, as defined by the Lease, does not include an area known to the parties as the "Bridge;" and (2) NCO properly exercised its early termination option.  The Motion is DENIED with respect to the

following facts and legal issues: (1) NCO did not properly calculate the required Termination Fee; and (2) there was no agreement between the parties to use the Building Owners and Managers Association International standard of measurement in determining the rentable square feet included in the Lease; and

3. Montgomery Park's Cross-Motion for Partial Summary Judgment (ECF No. 52) is DENIED.


/s/
_____
George L. Russell, III
United States District Judge


I hereby attest and certify on _Mar 3 2014_
that the foregoing document is a full, true and correct
copy of the original on file in my office and in my
legal custody.
FELICIA C. CANNON
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND

By _Agnes M. Finney_ Deputy

2

# EXHIBIT 2

UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

Chambers of
**George L. Russell, III**
United States District Judge

101 West Lombard Street
Baltimore, Maryland 21201
410-962-4055

May 27, 2014

MEMORANDUM TO COUNSEL RE:

NCO Financial Systems. Inc. v. Montgomery
Park. LLC
Civil Action No. GLR-11-1020

Dear Counsel:

Pending before the Court is Defendant Montgomery Park LLC's ("Montgomery Park") Motion for Reconsideration or, Alternatively, Request for Leave to File an Interlocutory Appeal. (ECF No. 60). The Court, having reviewed the pleadings and supporting documents, finds no hearing necessary. See Local Rule 105.6 (D.Md. 2011). For the reasons that follow, Montgomery Park's Motion will be granted in part and denied in part.

In its Memorandum Opinion dated December 20, 2013, this Court granted partial summary judgment in favor of Plaintiff, NCO Financial Systems, Inc. ("NCO"), by declaring, inter alia, as a matter of law that NCO properly terminated the parties' Lease early. (ECF No. 59). The Court construed the calculation of the Termination Fee, as defined in the Early Termination Provision, to be a "non-material covenant," rather than a condition precedent to the exercise of the early termination option. (See id.). In granting partial summary judgment, the Court concluded that the underlying and undisputed facts established circumstances excusing NCO's failure to properly calculate the Termination Fee. (See id.). Montgomery Park now requests that this Court reconsider its holding under Federal Rule Civil Procedure 54(b), or grant it leave to file an interlocutory appeal on the issue pursuant to 28 U.S.C. § 1292(b) (2012).

First, Montgomery Park argues it was not afforded notice or opportunity to address the grounds upon which the Court based its ruling as required by Federal Rule of Civil Procedure 56(f). The term "notice" in the context of Rule 56(f)(2) has been defined to mean "that the targeted party had reason to believe the court might reach the issue and received a fair opportunity to put its best foot forward." Gibson v. Mayor & Council of City of Wilmington, 355 F.3d 215, 223-24 (3d Cir. 2004) (quoting Leyva v. On the Beach, Inc., 171 F.3d 717, 720 (1st Cir. 1999)) (internal quotation marks omitted).

In its Opposition to NCO's Motion for Partial Summary Judgment, Montgomery Park argued that NCO failed to properly exercise its early termination option because it failed to act in strict compliance with the conditions found in the Early Termination Provision as required under controlling Maryland law. In support of its argument, Montgomery Park cited to Elderkin v. Carroll, 941 A.2d 1127 (Md. 2008), and Chesapeake Bank of Md. v. Monro Muffler/Brake. Inc., 891 A.2d 384, 401 (Md.Ct.Spec.App. 2006), for the proposition that exercise of an option requires strict compliance with its express conditions. The Court agrees that Elderkin and Chesapeake Bank

of Md. squarely address and support Montgomery Park's contention that exercise of an option in a Lease Agreement requires strict compliance (or "exact matching") with its express conditions.

The Maryland Court of Appeals goes a step further in Elderkin, however, and articulates the "particular inquiries that must be made in determining whether the exercise of an option is valid." Elderkin, 941 A.2d at 1135 (emphasis added). The first of which requires the Court to determine whether the attempt to exercise the option was in exact accordance with its terms, and if not, whether either an exception applies or the deficient term qualifies as something other than a condition. Among the distinctions identified by Elderkin, and most relevant to the instant Motion, is determining whether the deficient term qualified as a non-material covenant rather than a condition as first articulated by the Maryland Court of Appeals in Beckenheimer's Inc. v. Alameda Associates, 611 A.2d 105, 114 (Md. 1992). Elderkin, 941 A.2d at 1135.

In its Opinion, the Court concluded that given both the structure and plain language of the Early Termination Provision considered in the context of the Lease Agreement as a whole, the definitional descriptor of the Termination Fee used in the Early Termination Provision amounted to a non-material covenant rather than a condition precedent. Montgomery Park had reason to believe the Court might make this distinction because it relied on Elderkin in support of its position. While it is true that neither party expressly addressed the distinction in its briefs, Montgomery Park can hardly complain of surprise that this Court made the distinction after engaging in an analysis predicated by a case in which it relied in support of its position. Accordingly, the Court concludes that it did not err by failing to provide Montgomery Park with additional notice of its intent to distinguish the Termination Fee, as defined by the lease, as a covenant as opposed to a condition precedent.

Nonetheless, the Court has carefully reconsidered the parties' briefings on this issue but finds no error. Montgomery Park argues the Court erred in its finding that exact calculation of the Termination Fee, as defined in the Early Termination Provision, did not create a condition precedent, and that NCO's miscalculation of the Termination Fee bars the Court from finding that it properly exercised its early termination option. Further, Montgomery Park agues even if the Court was correct in its holding that the calculation of the Termination Fee was a covenant as opposed to a condition, the issues of materiality of breach and "good faith" create triable issues of fact that cannot be resolved in favor of NCO on summary judgment.

"The construction of contractual language is . . . 'a question of law for the court to resolve.'" Storetrax.com, Inc. v. Gurland, 895 A.2d 355, 367 (Md.Ct.Spec.App. 2006) (quoting Lerner Corp. v. Three Winthrop Props., Inc., 723 A.2d 560, 568 (Md.Ct.Spec.App. 1999)) (internal quotation marks omitted), aff'd, 915 A.2d 991 (Md. 2007). Additionally, when the underlying facts at issue are undisputed "it is for the court to decide whether those facts constitute a breach of the contract." Weaver v. ZeniMax Media, Inc., 923 A.2d 1032, 1051 (Md.Ct.Spec.App. 2007) (citing 23 Richard A. Lord, Williston on Contracts § 63:15 (4th ed., Supp. 2006)). Here, the question of whether NCO's miscalculation of the Termination Fee was a non-material breach is a question of law appropriate for the Court to resolve because the underlying facts relied on by the Court in its decision are undisputed.

Upon examination of the structure and language used in the Early Termination Provision, the Court found that the provision clearly and unambiguously created two conditions precedent, set forth as subsections (a) and (b) of section [1]. Subsection (a) clearly articulates the timely notice

2

condition as restated in sections [2] and [3]. Subsection (b) clearly articulates the timely pay condition also as restated in sections [2] and [3]. Montgomery Park argues that the condition articulated in subsection (b) also requires that NCO timely pay the termination fee "in the proper amount." While subsection (b) defines the manner in which the termination fee is to be calculated, the term "in the proper amount" is not used anywhere in the Early Termination Provision. Montgomery Park would like the Court to read the term "as required above" in section [2] to mean "in the proper amount." The Court is unwilling, to make this leap given that sections [1] and [3] of the provision identified only the two express conditions requiring NCO to timely notice and timely pay. (Pl.'s Mem. Supp. Mot. Partial Summ. J. Ex. 2, Attach. 2, § 1.05, ECF No. 51-1).

Further, in considering the plain language of the provision in the context of the Lease Agreement as a whole, the Court found that an exact calculation of the Termination Fee was impractical given the requirement that NCO include in its calculation fees incurred after the Termination Fee was due and requiring the parties to engage in an accounting of those costs before ultimately determining appropriate adjustments in the final fee amount. Thus, in accordance with the preferences required by Maryland law, the Court found that an exact calculation of the Termination Fee was not a condition, but merely a covenant. See Beckenheimer's Inc., 611 A.2d at 114 ("Unless the agreement makes it clear that the event is required as a condition, it is fairer to apply these more flexible rules." (quoting Restatement (Second) of Contracts § 227 (1981))).[1]

Montgomery Park now argues NCO's factual concession that the Termination Fee "must be paid in full" to properly exercise its early termination option satisfies any dispute that proper calculation was an express condition. The Court disagrees. "Paid in full" is not synonymous with "amount due." For example, NCO concedes that whatever amount is calculated to be due must be paid in full three months prior to the termination effective date. This concession, however, does not prevent either party from disputing the calculation of that amount, which of course, is the exact circumstance upon which this action rests. Further, Montgomery Park argues a material dispute exists as to the whether an exact calculation of the Termination Fee is impractical because the undisputed facts show that it never disputed the amount of the first installment payment or the Additional Rent adjustments taken by NCO in the second installment. Parol evidence, however, "is only admissible after the court finds the contract to be ambiguous." Sy-Lene of Wash., Inc. v. Starwood Urban Retail II, LLC, 829 A.2d 540, 544 (Md. 2003) (citing Calomiris v. Woods, 727 A.2d 358, 363 (Md. 1999)).[2]

Additionally, although misstated, the Court's use of the term "good faith attempt" was not used to reflect a finding of fact that NCO did not act in bad faith, but was merely reflecting the Court's conclusion that the plain language of the provision created impracticality to exact matching which excused NCO's failure to properly calculate the Termination Fee. See Beckenheimer's, 611 A.2d at 114 (finding where the conditions precedent to the contract had been fulfilled, equity could specifically enforce the covenant to renew). Accordingly, the Court concludes that it did not err in its holding that NCO properly terminated the Lease under the Early Termination Provision.

---

[1] The Court does not find ambiguity in the Early Termination Provision. The Court simply disagrees with Montgomery Park's interpretation that the provision requires an exact calculation of the termination fee either as a third condition or as part of the second condition to timely pay. Because the language of the provision does not clearly reflect the parties' intent to include the calculation as a condition, a more flexible interpretation is appropriate under Maryland law.

[2] See supra note 1.

3

Finally, Montgomery Park seeks request for leave to file an interlocutory appeal under Section 1292(b). Montgomery Park argues the Court's conclusion that NCO properly exercised it early termination option presents a controlling question of law about which there is a substantial ground for disagreement. In addition, Montgomery Park asserts that interlocutory appellate resolution of the early termination may materially advance the ultimate termination of the litigation by preventing the necessity of a second trial on Montgomery Park's counterclaims in the event of a remand by the United States Court of Appeals for the Fourth Circuit.

Section 1292(b) "provides for such an appeal where an otherwise non-appealable order involves a controlling question of law as to which there is substantial ground for difference of opinion and which, if resolved, may materially advance the ultimate termination of the litigation." Beck v. Comm'ens Workers of Am., 468 F.Supp. 93, 95 (D.Md. 1979). "The kind of question best adapted to discretionary interlocutory review is a narrow question of pure law whose resolution will be completely dispositive of the litigation, either as a legal or practical matter, whichever way it goes." Fannin v. CSX Transp., Inc., 873 F.2d 1438 (4th Cir. 1989) (unpublished table decision). "Section 1292(b), a narrow exception to the longstanding rule against piecemeal appeals, is limited to exceptional cases." Beck, 468 F.Supp. at 95-96 (citing Milbert v. Bison Labs., 260 F.2d 431, 433 (3d Cir. 1958)).

Because the Court recognizes that its decision to grant leave to file an interlocutory appeal is a close one, it is persuaded that interlocutory review is appropriate. Montgomery Park's disagreement with the Court's interpretation of the Lease's Early Termination Provision demonstrates a difference of opinion so as to necessitate the unusual step of granting an immediate interlocutory appeal, especially where a resolution in Montgomery Park's favor on appeal may prevent the necessity of a second trial on Montgomery Park's counterclaims. Accordingly, Montgomery Park's request for an immediate appeal under Section 1292(b) is granted. Montgomery Park shall note its appeal within ten days of this order.

For the foregoing reasons, Montgomery Park's Motion for Reconsideration or, Alternatively, Request for Leave to File an Interlocutory Appeal (ECF No. 60) is GRANTED in part and DENIED in part. The Court will not reconsider its decision granting NCO partial summary judgment, but grants Montgomery Park leave to file an interlocutory appeal on the issue. Despite the informal nature of this memorandum, it shall constitute an Order of this Court, and the Clerk is directed to docket it accordingly. Further, the clerk shall ADMINISTRATIVELY CLOSE this case pending appeal subject to being reopened by either party.

Very truly yours,

/s/

George L. Russell, III
United States District Judge

I hereby attest and certify on May 5, 2014
that the foregoing document is a full, true and correct
copy of the original on file in my office and in my
legal custody.

FELICIA C. CANNON
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND

By _____ Deputy

4

## CERTIFICATE OF COMPLIANCE WITH FRAP
## RULES 5 and 32(a) & (c)
### Certificate of Compliance with Type-Volume Limitation,
### Typeface Requirements and Type Style Requirements

1. This Petition complies with the page limitations of FRAP Rule 5(c) because the brief is does not exceed 20 pages, exclusive of the disclosure statement, the proof of service and the accompanying documents required by Rule 5(b)(1)(E).

2. This Petition complies with the Typeface requirements of FRAP 32(a)(5) and the type style requirements of FRAP 32(a)(6), as incorporated by reference in FRAP 32(c)(2) because:

> This Petition has been prepared in proportional spaced typeface using MIRCOSOFT WORD® in 14-point Times New Roman.

John E. McCann, Jr.

June 6, 2014

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on June 6, 2014, I filed the original and three (3) copies of the foregoing with the Clerk of Court, and served two (2) paper copies of the foregoing Petition via first-class mail, postage pre-paid, and one copy via e-mail, to each of following counsel of record:

> Norman E. Greenspan, Esquire
> Starfield & Smith, P.C.
> 1300 Virginia Drive, Suite 325
> Fort Washington, PA 19034
> (215) 542-7070
> ngreenspan@starfieldsmith.com
>
> Joshua R. Treem, Esquire
> Brown, Goldstein & Levy
> Suite 1700
> Baltimore, MD. 21202
> jtreem@browngold.com
>
> *Attorneys for Respondent, NCO Financial Systems, Inc.*

The necessary filing and service were performed in accordance with the instructions given to me by counsel in this case.

Adrienne R. Acra-Passehl
Gibson Moore Appellate Services LLC
421 East Franklin Street
Suite 320
Richmond, VA  23219